**No. 26825**

**The People of the State of Colorado v. Martin J. O'Fallon**

(539 P.2d 1251)

Decided August 25, 1975.

J. D. MacFarlane, Attorney General, Edwin L. Felter, Jr., Assistant, for The People of the State of Colorado.

Martin J. O'Fallon, pro se.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an original proceeding in discipline filed in this court by the attorney general wherein the respondent, Martin J. O'Fallon, an attorney licensed to practice law in the state of Colorado, was charged with various and sundry acts of professional misconduct which were alleged to be contrary to the highest standards of honesty, justice and morality.

The complaint contained three counts, the first two of which, in essence, charged that on or about March 16, 1973, the complainant, D. A.

Browndyke, paid $12,500 to the respondent under an agreement that respondent would put said sum in a bank trust account, pay out such portion of the funds as Mr. Browndyke directed, and return the balance, if any, to Mr. Browndyke. Thereafter, contrary to the terms of the trust agreement, the respondent caused amounts to be withdrawn from the trust account, and that respondent was authorized to withdraw $750 as a loan, but respondent issued a check on the trust account and caused the check to appear to be in payment of legal fees. Count 3 on motion of the attorney general was dismissed at the outset of the hearing.

The respondent in a formal answer admitted the trust agreement; alleged that the $750 check which respondent issued to himself from the trust account represented a loan to himself in the amount of $500; and that the remaining $250 was to cover payment for services of respondent in a dissolution of marriage action involving the complainant.

The committee noted that:

"The matters in controversy were also the subject of a civil action, *Browndyke v. O'Fallon*, No. 42345, in the District Court, Jefferson County, Colorado, and the hearings panel was advised that the lawsuit had been settled and that the indebtedness due complainant was now satisfied."

The hearings panel of the Grievance Committee made detailed findings of fact, based largely on undisputed evidence:

"[T]here was no dispute that the Complainant gave the sum of $12,500.00 to Respondent and that Respondent was to utilize these funds as a trust account. The funds were to be utilized to pay bills on behalf of the Complainant. It was also undisputed that on several occasions the Complainant requested and received blank checks signed by Respondent. Respondent did not always know the amount of the checks or the identity of the payee as the amount and payee were left blank at the time he signed the check. The evidence further showed that the Complainant, D. A. Browndyke, Sr., and the Respondent had met at the AA Club on York Street and had loaned each other funds at various times. Complainant was involved in a domestic matter and engaged Respondent to represent him in that matter for an agreed upon fee. Complainant subsequently received funds from an estate and because of various problems the money was set up in the aforementioned trust fund. The Respondent requested and received permission from the Complainant to borrow $750.00 from this fund and subsequently Respondent issued himself a check in the amount of $750.00 and caused to be placed a notation "legal" on said check. $250.00 of this amount was to be Respondent's fee in the dissolution of marriage action and the $500.00 was a loan. Complainant requested an accounting and made many telephone calls to Respondent and subsequently filed the complaint when he failed to receive the accounting. Complainant also wrote a letter to Respondent (Exhibit B) and received no response. Complainant subsequently turned the matter over to an attorney ⸻⸻⸻, and

the Civil Action No. 42345 previously referred to was initiated.

"The evidence further shows that the Respondent did not know the balance in the trust account as he had given checks which he signed but left the payee and amount blank for the Complainant to complete and the bank statements and all cancelled checks were turned over to Leonard Cooke. The Respondent was of the opinion that the trust funds belonging to Complainant had been expended and that Complainant received the checks and statements. The Respondent continued to utilize the trust account as a regular checking account after turning the cancelled checks and statements over to Mr. Cooke and felt that the account was clear. On one occasion he advised the Complainant to put in additional funds to make sure that checks written for child support would clear the account. Respondent never informed Complainant of any fees other than the $250.00 for the domestic relation matter and knew there was a balance in the trust account of $115.69 on April 27, 1973. He never rendered an accounting and subsequently used the account for personal purposes. Inasmuch as the Respondent had turned over the bank statements and checks to Mr. Cooke some time in May of 1973 he did not have the records to make the accounting.

"Respondent advised that he had been engaged with radio and television for approximately 20 years and has been in the active practice since 1973. The hearings panel after deliberating subsequently discovered that Respondent was the subject of a private censor in 1968 and that on June 23, 1972 he had received a letter of admonition.

"The hearings panel feels that the prior discipline should be considered and was so considered."

The respondent elected not to file exceptions to the Findings of Fact and Conclusions of Law, but filed "Exceptions to Committee Recommendations." In this pleading he requested the court to review the recommendations of the Grievance Committee in light of the unusual relationship between the complainant and respondent. The respondent states:

". . . As was disclosed in the Findings of Fact, Complainant and Respondent met at the AA Club in Denver. When told of Complainant's short check problems, Respondent immediately undertook to assist Complainant not knowing whether he would receive a fee. In addition, Respondent loaned Complainant sums of money for him to subsist on and visited him in the hospital when he was quite ill. It was not, and is not, unusual for Respondent to give legal assistance to people recovering from alcoholic problems. . . ."

The respondent then enumerates various acts of charity, of helpfulness and good will which he has performed over the years for those with alcoholic problems, as well as service on the boards of various alcoholic assistance programs "in designing individual treatment solutions for various clients."

Respondent, however, states that

"[He] realizes that the conduct in the use of the funds is a proper subject for discipline, and the many hours of compassionate work does not give license to act in the manner found by the Hearing Panel. Since the prior discipline proceedings the respondent has overcome his personal drinking problems and has started the active practice of law in 1973."

The respondent prays for a private censure and that he be ordered to pay the costs of this proceeding.

A review of the court's grievance files discloses that the respondent received a private reprimand by the court on February 6, 1969, and that a letter of admonition from the Grievance Committee of this court was sent to the respondent on or about July 11, 1972.

The important problem of fashioning proper discipline is always a difficult matter. We must not only weigh the derelictions of duty arising out of the immediate attorney-client relationship, but other breaches of duties to other clients, as disclosed by previous proven charges, must also be considered.

The general public has a very definite interest in the conduct of lawyers. It must be protected from the lawyer who regards his responsibilities to his clients as lightly as the respondent and who through carelessness and inaction mishandles and neglects his clients' business.

We agree with the Grievance Committee that the proper disciplinary action is suspension for 90 days. Further transgressions, however, may lead to more severe penalties in the future.

Accordingly, it is ordered that the respondent be and he hereby is ordered suspended from the practice of law for a period of 90 days from the date hereof.

It is further ordered that the costs of these proceedings in the amount of $86.51 be taxed to the respondent and he is directed to pay them within 60 days hereof.

MR. JUSTICE ERICKSON does not participate.